## CIRCUIT COURT OF FAIRFAX COUNTY

Randy J. Van Dyke

v.

Lisa Van Dyke

Case No. (Chancery) 144143

BY JUDGE JANE MARUM ROUSH

December 2, 1998

This matter came on to be heard November 23, 1998, on the Rule to Show Cause issued by this Court against the plaintiff Randy Van Dyke ("Mr. Van Dyke") directing him to show cause why he should not be held in contempt of court for his failure to return his two children to the defendant Lisa Van Dyke ("Mrs. Van Dyke") following the end of a visitation period and for his failure to pay child support. For the following reasons, the Court will enter an order finding Mr. Van Dyke in contempt and imposing sanctions.

### Facts

Resolution of this case involves interpretation of the Uniform Child Custody Jurisdiction Act, as adopted in both Virginia and Pennsylvania, Va. Code Ann. § 20-125, *et seq.*, 23 Pa. C.S. § 5341, *et seq.* ("UCCJA"), and the Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A ("PKPA"). Portions of the PKPA are codified in other sections of the United States Code not relevant to this case. See 42 U.S.C. §§ 653-55, 663 and 18 U.S.C. § 1073 (note).

Mr. and Mrs. Van Dyke were married in 1985 in Virginia. Two children were born of the marriage: Vincent Van Dyke, born December 16, 1985, and

Ashley Van Dyke, born March 23, 1990. The family lived for several years in Virginia. Mr. Van Dyke filed his bill of complaint for divorce in this Court on April 30, 1996, and shortly thereafter moved to Pennsylvania. Mrs. Van Dyke and the children remained in Virginia. A decree was entered on August 2, 1996, awarding Mrs. Van Dyke *pendente lite* custody of the children and liberal visitation to Mr. Van Dyke. This Court entered an order on October 4, 1996, suspending Mr. Van Dyke's visitation following his apparent suicide attempt and involuntary psychiatric hospitalization. Thereafter, visitation was to occur "as permitted by [Mrs. Van Dyke], under such terms and conditions as she deems acceptable." A final custody order was entered by this Court on January 13, 1997, awarding Mrs. Van Dyke permanent sole custody of the children and continuing Mr. Van Dyke's visitation at the discretion of Mrs. Van Dyke. In addition, Mr. Van Dyke was ordered to pay child support in the amount of $560.00 per month, plus an additional $150.00 per month towards the arrearages of child support in the amount of $3,640.00.

On March 16, 1997, Mr. Van Dyke, acting *pro se*, filed in this Court a "Motion for Immediate Change of Custody." He noticed the motion for a hearing on March 21, 1997, the Court's next Friday motions day. The motion was not docketed by the clerk of this Court because Mrs. Van Dyke was not given the minimal notice of at least one week. Thereafter, Mr. Van Dyke took no further action on his motion for a change of custody. (That motion was eventually withdrawn but not until January 30, 1998.)

In June 1997, Mrs. Van Dyke consented to a Father's Day visit by the children to Mr. Van Dyke in Pennsylvania. A second visit was agreed to in July 1997. At the scheduled end of the July 1997 visit, Mr. Van Dyke was reluctant to return the children. Mrs. Van Dyke and Mr. Van Dyke entered into a series of written agreements extending the time of the visitation. The parties' last agreement provided, in pertinent part:

> Visitation Agreement for Vincent Scott Van Dyke and Ashley Marie Van Dyke. [The children] shall be visiting their father Randy Jack Van Dyke from August 1st until November 1st 1997. They will be staying at their father's house 722 N. Water Street, Kittanning, Pa. 16201.

Defendant's Ex. # 3. These extensions were agreeable to Mrs. Van Dyke in part because she moved to West Virginia in late June 1997 to enroll in nursing school, and her housing situation was unsettled.

Mrs. Van Dyke believed that Mr. Van Dyke would not willingly return the children to her on November 1. She traveled to Pennsylvania on November 5, 1997, and registered the final custody order of this Court with the

Pennsylvania court. With the assistance of the local sheriff, the children were removed from school in anticipation of being returned to Mrs. Van Dyke. Prior to leaving Pennsylvania, Mrs. Van Dyke returned briefly to Mr. Van Dyke's house to retrieve her daughter's doll. Mr. Van Dyke was then on the telephone speaking with his sister, a local attorney. The sheriff advised Mrs. Van Dyke to return to the local courthouse.

Mrs. Van Dyke returned to the Armstrong County Courthouse on the afternoon of November 5, 1997, as directed by the sheriff. A judge of the Court of Common Pleas of Armstrong County (the "Pennsylvania court"), believing he was maintaining the "status quo," entered an order that day awarding temporary custody of the children to Mr. Van Dyke and directing that the children not leave Pennsylvania. Plaintiff's Ex. # 8. Mr. Van Dyke, represented by his attorney sister, immediately filed a petition for change of custody with the Pennsylvania court. Defendant's Ex. # 6. In his petition, Mr. Van Dyke did not disclose to the Pennsylvania court that his motion for a change of custody was pending in this Court. Mr. Van Dyke testified at trial in this matter that he "forgot" about his motion to modify custody pending in Virginia.

A hearing was hastily arranged for the next day, November 6, 1997. A full transcript of the hearing was admitted as Plaintiff's Ex. # 1. Mrs. Van Dyke was appointed a legal aid attorney who (on very short notice) represented her at that hearing. The sole issue at the November 6th hearing was whether the Pennsylvania court had jurisdiction to determine custody of the children under the UCCJA.

On December 4, 1997, the Pennsylvania court ruled that it did have jurisdiction under the UCCJA to consider Mr. Van Dyke's petition for a change of custody. Plaintiff's Exs. # 9 and # 10. The Pennsylvania court found that Pennsylvania was not the "home state" of the children under the UCCJA because they had not lived in Pennsylvania for six months. Nevertheless, the Pennsylvania court held that Pennsylvania had jurisdiction because the children had a "significant connection" to Pennsylvania and that "Virginia has no basis to any longer claim jurisdiction" because neither parent lived in Virginia and because no custody proceeding was pending in Virginia. The Pennsylvania court ordered that the November 5, 1997, order awarding Mr. Van Dyke temporary custody and directing that the children not leave Pennsylvania "shall remain in full force and effect pending further Order of this Court." On December 19, 1997, the Pennsylvania court entered an order suspending Mr. Van Dyke's obligation to pay child support retroactive to July 1997, when the children first came to visit Mr. Van Dyke. Plaintiff's Ex. # 11.

Mrs. Van Dyke appealed the Pennsylvania court's ruling on the jurisdictional issue to the Pennsylvania Superior Court, the intermediate appellate court in Pennsylvania. That court heard oral argument on Mrs. Van Dyke's appeal on June 24, 1998, but has not, as of the date of trial in this matter, rendered its decision.

The UCCJA anticipates that judges involved in interstate custody dispute will confer with each other. Judge Thacher of this Court (who heard several pre-trial motions in this case) has spoken to Judge Valasek, the Pennsylvania trial judge. Judge Valasek told this Court that he would not have made his ruling of December 4, 1997, had he known that Mr. Van Dyke had a petition for change of custody pending in this Court. Judge Valasek has advised that he has lost jurisdiction to modify his custody order while the case is on appeal.

Due to the pendency of this custody dispute, Mrs. Van Dyke's plans to attend nursing school in West Virginia have been shelved. She has relocated to Virginia and presently lives in Norfolk, Virginia. The children have now been in Pennsylvania for almost one and one-half years, since July 1997.

### Applicable Law: Custody

The UCCJA and the PKPA were intended to prevent just such an interstate child custody dispute as this case. The legislative history of the PKPA indicates that Congress intended to end parental "seizure, restraint, concealment and interstate transportation of children, the disregard of court orders, excessive relitigation of cases, [and] obtaining conflicting orders by the courts of various jurisdictions." Congressional Findings and Declaration of Purpose, Section 7 of Pub. Law 96-611. See generally, *Middleton v. Middleton*, 227 Va. 82, 314 S.E.2d 362 (1984).

This Court concludes it is not required to give full faith and credit to the November 5, 1997, order of the Pennsylvania court giving Mr. Van Dyke temporary custody of the children and ordering that the children remain in Pennsylvania. Under the PKPA, this Court must give full faith and credit to the custody determination of another state that is "made consistently with the provisions of [the PKPA]." 28 U.S.C. § 1738(a). In this case, the custody determination of the Pennsylvania court was not made consistently with the PKPA. Specifically, the Pennsylvania court had no jurisdiction to modify the custody order of this Court under the PKPA.

The record shows that the Pennsylvania court sought to follow the UCCJA based on the information that it was given.

The record does not disclose that the Pennsylvania court specifically considered the PKPA, but the applicable provisions of the PKPA are similar to the provisions of the UCCJA that the Pennsylvania court did consider. The

PKPA and the UCCJA differ in that the PKPA has a strong preference for "home state" jurisdiction over "significant connection" jurisdiction. Nevertheless, the PKPA's preference for "home state" jurisdiction appears to have no applicability to this case because, although Virginia had been the "home state" of the Van Dyke children within six months of the commencement of the Pennsylvania proceeding, no parent or child continued to live in Virginia at the time of the Pennsylvania court's custody determination. 28 U.S.C. § 1738A(c)(2)(A).

The Pennsylvania court, however, was not given all the information it needed properly to apply the UCCJA. Mr. Van Dyke, contrary to the requirements of the UCCJA, failed to inform the Court of his pending custody petition in this Court.

The PKPA provides, in part, that:

A court of a State *shall not* exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C. § 1738A(g) (emphasis added). Similarly, the UCCJA provides that:

A court of this Commonwealth *shall not* exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in the court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this Commonwealth is a more appropriate forum or for other reasons.

Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties … concerning the pendency of the proceedings with respect to the child in other states.

Va. Code § 20-129(A) and (B); 23 Pa. C.S. § 5347(a) and (b) (emphasis added). The UCCJA requires a party in a custody proceeding to disclose under oath in his first pleading, among other things, "whether … [h]e has information of any custody proceeding concerning the child pending in a court of this or any other state." Va. Code § 20-132(A)(2); 23 Pa. C.S. § 5350(a)(2).

Contrary to the requirements of the UCCJA, Mr. Van Dyke did not disclose to the Pennsylvania court the pendency in this Court of his motion to

modify custody. His petition for modification of custody filed in Pennsylvania is silent on the pendency of other proceedings. Defendant's Ex. # 6. In its written opinion, the Pennsylvania court made a specific — and in retrospect, erroneous — finding that there was no custody petition pending in Virginia.

Mr. Van Dyke contends that his motion for modification of custody in Virginia was not "pending" within the meaning of the UCCJA and the PKPA. He claims that it was filed *pro se*, that it was not docketed for a hearing, and that he had forgotten about it by the time of the Pennsylvania court's November 6th hearing.

This Court concludes that Mr. Van Dyke's motion for a change of custody was "pending" within the meaning of the UCCJA and the PKPA from the date of filing in March 1997 until withdrawn on January 30, 1998. He had filed the motion and noticed it for a hearing date. It was not withdrawn until January 1998. Furthermore, his bill of complaint of divorce was pending in this Court until January 1998, when the final decree of divorce was entered. *See generally*, David Carl Minneman, Annotation, *Pending Proceedings in Another State as Ground for Declining Jurisdiction Under § (6)(a) of the Uniform Child Custody Jurisdiction Act (UCCJA) or The Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A(g),* 20 A.L.R.5th 700 (1994).

Therefore, under both the PKPA and the UCCJA, had the Pennsylvania court been properly advised by Mr. Van Dyke, it should have declined jurisdiction because there was a custody proceeding related to the Van Dyke children pending in this Court and this Court had not declined jurisdiction.

In addition, the Pennsylvania court should have declined jurisdiction under the UCCJA because Mr. Van Dyke had "improperly retained the [children] after a visit or other temporary relinquishment of physical custody." Va. Code § 20-131(B); 23 Pa. C.S. § 5349(b). At the November 6, 1997, hearing in Pennsylvania, Mr. Van Dyke acknowledged that Mrs. Van Dyke had custody of the children, that he had them temporarily, and that he now wanted custody because "circumstances have changed." Because the November 6, 1997, hearing was held with less than 24 hours' notice to Mrs. Van Dyke, she did not have in her possession a copy of her written "Visitation Agreement" with Mr. Van Dyke granting him "visitation" from August 1 until November 1, 1997. Defendant's Ex. # 3. Nevertheless, there was no genuine dispute that Mr. Van Dyke was withholding the children after the end of a visitation period. Accordingly, the Pennsylvania court should have declined jurisdiction under the UCCJA on the basis that Mr. Van Dyke had "improperly retained the [children] after a visit or other temporary relinquishment of physical custody." 23 Pa. C.S. § 5349(b); Va. Code § 20-131(B).

Finally, both the PKPA and the UCCJA require that a contestant be given "reasonable advance notice and an opportunity to be heard" before any custody determination is made. 28 U.S.C. § 1738A(e); 23 Pa. C.S. § 5345; Va. Code § 20-127. In this case, Mrs. Van Dyke was given less than 24 hours' notice of a hearing that has effectively deprived her of custody of her children for over a year. She was appointed a legal aid attorney on the same day as the hearing who had only a "few hours" prior notice to prepare. She did not have in her possession key documents such as the most recent "Visitation Agreement" that Mr. Van Dyke had signed. The trial judge described the hearing as "hurriedly arranged" and expressed his concern "about the fairness at this point in time to [Mrs. Van Dyke] of having to produce evidence so quickly on the issue of temporary custody." The UCCJA as enacted in Pennsylvania requires at least 10 days' notice to out-of-state contestants before jurisdiction may be exercised over that person. 23 Pa. C.S. § 5346. This Court concludes that the Pennsylvania hearing on November 6, 1997, was conducted without "reasonable notice and opportunity to be heard" given to Mrs. Van Dyke under either the PKPA or the UCCJA.

In summary, this Court need not give full faith and credit to the Pennsylvania court's custody determination because it was not made consistently with the PKPA for the following reasons: (i) the Pennsylvania court should have declined jurisdiction under the PKPA in that there was a pending custody proceeding in Virginia, and (ii) reasonable notice was not given to Mrs. Van Dyke of the November 6th hearing. Furthermore, the Pennsylvania court's order was not entered in compliance with the UCCJA because: (i) the Pennsylvania court should have declined jurisdiction under the UCCJA both because there was a pending custody proceeding in this Court and because Mr. Van Dyke had improperly retained the children after a visit or other temporary relinquishment of physical custody, and (ii) at least 10 days' advance notice had not been given to Mrs. Van Dyke of the November 6th hearing as required by the Pennsylvania version of the UCCJA.

*Applicable Law: Child Support*

As mentioned above, on December 19, 1997, the Pennsylvania court entered an order suspending Mr. Van Dyke's obligation to pay child support retroactive to July 1997, when the children first came to visit Mr. Van Dyke. Plaintiff's Ex. # 11. Mrs. Van Dyke received ten child support payments pursuant to a payroll withholding order in 1997 before those payments stopped. She contends that Mr. Van Dyke is still obligated to pay child support payments pursuant to this Court's order of January 13, 1997. Mr. Van

Dyke argues that the Pennsylvania court properly suspended his obligation to pay child support.

This Court concludes that it need not afford full faith and credit to the order of the Pennsylvania Court suspending Mr. Van Dyke's obligation to pay child support.

Under the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B, this Court must give full faith and credit to the child support order entered by another state if that order was made consistently with 28 U.S.C. § 1738B. In this case, however, the Pennsylvania court's support order was not made consistently with 28 U.S.C. § 1738B. The Pennsylvania court should not have modified the Virginia child support order except in compliance with 28 U.S.C. § 1738(B)(e), (f), and (i). Those sections were not followed in this case.

Under 28 U.S.C. § 1738B(e), the Pennsylvania court could modify Virginia's support order only if it had jurisdiction pursuant to 28 U.S.C. § 1738(B)(i). That subsection provides:

> (i) Registration for modification. If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

28 U.S.C. § 1738(B)(i). At the time of the Pennsylvania court's support order, neither the parents nor the children resided in Virginia. Therefore, Mr. Van Dyke, as the moving party, had to register the Virginia support order in a state with jurisdiction over Mrs. Van Dyke (the "nonmovant") for the purpose of modification. The Pennsylvania court had no jurisdiction over Mrs. Van Dyke for the purpose of modification of the support order. She was neither a resident of Pennsylvania, nor had she submitted herself to the jurisdiction of the Pennsylvania court for the purposes of determination of child support. See, e.g., *Johns v. Johns*, 5 Va. App. 494, 364 S.E.2d 775 (1988). See also *Taylor v. Jarrett*, 191 Ariz. 550, 959 P.2d 807 (Ariz. App. 1998) (nonresident spouse's participation in UCCJA custody proceeding did not constitute submission to the personal jurisdiction of the court for child support determination).

Furthermore, there appears no basis for the Pennsylvania court's exercising personal jurisdiction over Mrs. Van Dyke for the purposes of child support under the Uniform Interstate Family Support Act (UIFSA). 23 Pa. C.S., Ch. 72 (jurisdiction). See, e.g., Va. Code § 20-88.35 (basis for jurisdiction over nonresident under UIFSA).

Under UIFSA, this Court is not required to recognize the Pennsylvania court's order suspending Mr. Van Dyke's child support obligation. Va. Code § 20-88.77. UIFSA provides that (with certain exceptions not applicable in this case) a support order of an issuing state registered in a responding state can only be modified by the responding state if the petitioner seeking modification is a nonresident of the responding state. Va. Code § 20-88.76; 23 Pa. C.S. § 7611. In this case, the party requesting the modification by the Pennsylvania court was Mr. Van Dyke, a resident of Pennsylvania. Therefore, under UIFSA, the Pennsylvania court should not have modified this Court's support order on Mr. Van Dyke's motion.

This Court concludes that the Pennsylvania court's order of December 19, 1997, did not relieve Mr. Van Dyke of his obligation to pay child support pursuant to this Court's January 13, 1997, order.

Mr. Van Dyke argues that he should be excused from his child support obligation under the rationale of *Acree v. Acree*, 2 Va. App. 151, 342 S.E.2d 68 (1986). The Court disagrees. In *Acree*, unlike this case, the Court found an "undisputed agreement" between the parents under which the mother agreed to "relinquish custody on a *permanent* basis" and "further agreed to the elimination of support payments." 2 Va. App. at 155-156 (emphasis in original). In this case, there was no agreement by Mrs. Van Dyke to relinquish permanent custody and to eliminate child support payments. Instead, the evidence overwhelmingly established that Mrs. Van Dyke agree to a period of visitation that was to end on November 1, 1997, that Mr. Van Dyke wrongfully retained the children at the conclusion of the visitation, and that Mrs. Van Dyke since that time has vigorously pursued return of the children and resumption of child support payments. To apply the narrow *Acree* exception to the facts of this case would serve only to encourage a noncustodial parent's wrongful retention of children after visitation.

## Conclusion

Mr. Van Dyke has failed to show cause why he should not be held in contempt of this Court's orders because he wrongfully withheld the children from their custodial parent following a visitation period and failed to pay child support.

## Sanctions

This Court will enter an order finding Mr. Van Dyke in contempt of this Court's prior orders as to custody and child support. He will be ordered to return the children immediately to Mrs. Van Dyke in Virginia. He will be

ordered to pay Mrs. Van Dyke's counsel's fees and costs in the amount of $15,000.00 within sixty days. He will be ordered immediately to resume child support payments of $560.00 per month in basic support, plus an additional $200.00 per month towards child support arrearages until paid. Arrearages are $9,420.00 as of November 30, 1998. Interest shall accrue on unpaid support at the judgment rate from the time each payment is due until paid.

### July 7, 1999

This matter came on to be heard on June 4, 1999, on the Motion of the Defendant, Lisa Van Dyke, to resolve the remaining issues in this case and transfer the case to the Juvenile and Domestic Relations District Court for the City of Norfolk. At that time, the Court took under advisement Mrs. Van Dyke's request that the Court's prior award of attorney's fees to her (which remains unpaid) be declared enforceable as a support obligation. The Court has had the opportunity to consider the matter fully, including counsel's arguments and submissions. For the foregoing reasons, Mrs. Van Dyke's request to characterize the award of attorney's fees as a child support obligation will be denied.

### Background

On December 2, 1998, the Court issued an opinion letter after a hearing on the Rule to Show Cause issued against the Complainant, Randy Van Dyke, for his failure to return his two children to Mrs. Van Dyke following a period of visitation and his failure to pay child support. Upon finding Mr. Van Dyke in contempt of court, the Court ordered, among other things, that Mr. Van Dyke pay Mrs. Van Dyke $15,000.00 of her attorney's fees within sixty days. As of the June 4, 1999, hearing, the $15,000.00 award had not been paid by Mr. Van Dyke. Mrs. Van Dyke moved this Court to reduce the $15,000.00 award against the Complainant to a judgment and to specify that such judgment shall be treated as support and added to the existing child support arrearage owed by the Complainant to the Defendant.

### Discussion

Mrs. Van Dyke argues several reasons why the Court should declare that the award of attorney's fees is enforceable as child support. First, Mrs. Van Dyke suggests that because it will be difficult for her to collect the award, the Court should classify the award as support to be collectable by the Division of Child Support Enforcement (DCSE). The Court concludes, however, that

it cannot recharacterize the nature of an award for a party simply based on the difficulty of collecting that award.

Second, Mrs. Van Dyke asserts that the Court has the statutory and inherent authority to award fees and costs as a form of support and cites the Court to Va. Code § 20-88.32 and the definition of a "Support order." Code § 20-88.32 states that a support order "may include related costs and fees, interest, income withholding, attorney's fees, and other relief." While a support order may include attorney's fees, the statute does not provide the authority for the enforcement of an attorney's fee award as child support.

Third, Mrs. Van Dyke refers to a decision in a bankruptcy case that states that an award of attorney's fees generally is classified as a non-dischargeable support debt. *Silansky v. Brodsky, Greenblatt & Renehan*, 897 F.2d 743, 744 (4th Cir. 1990). Whether an award of attorney's fees is non-dischargeable under federal bankruptcy law is a separate question from whether this Court can characterize the award as support and authorize DCSE to collect the amount for Mrs. Van Dyke.

The issue present in this case is analogous to the case of *Taylor v. Taylor*, 27 Va. App. 209 (1998). In *Taylor*, the Court of Appeals ruled that "the trial court erred in characterizing the award of attorney's fees as spousal support." *Id.* at 216. Finding that an award of attorney's fees and an award of spousal support contrast under their respective statutory schemes, the Court of Appeals concluded that, "An additional award of attorney's fees as lump sum spousal support offends the statute and threatens to blur the distinction between the two types of awards." *Id.* at 217. The same rationale applies to the distinction between an award of attorney's fees and an award of child support. Accordingly, the Court will not "blur the distinction" between its determination of a child support arrearage in this case and its award of $15,000.00 in attorney's fees and costs as a sanction against Mr. Van Dyke.

The Court will enter a judgment in favor of Mrs. Van Dyke against Mr. Van Dyke in the amount of the unpaid attorney's fee award of $15,000.00. That judgment, however, will not be designated as a judgment for unpaid child support and collectable as such.